**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------x
                                                       :
In re:                                                 :        Chapter 11
                                                       :
SPORTCO HOLDINGS, INC., et al.,[1]                     :        Case No. 19-11299 (JKS)
                                                       :
           Debtors.                                    :        (Jointly Administered)
                                                       :
-------------------------------------------------------x
RONALD FRIEDMAN, as trustee for the                    :
SportCo Creditors' Liquidation Trust,                  :
                                                       :
           Plaintiff,                                  :        Adv. Proc. No. 20-50554 (JKS)
                                                       :
v.                                                     :        **Reference D.I. Nos. 1, 15, 16, 17, 18, 19,**
                                                       :        **20, 24, 26, 27**
WELLSPRING CAPITAL                                     :
MANAGEMENT, LLC, WELLSPRING                            :
CAPITAL PARTNERS IV, L.P., WCM                         :
GENPAR IV, L.P., WCM GENPAR IV GP,                     :
LLC, ALEXANDER E. CARLES,                              :
WILLIAM F. DAWSON, JR., JOHN E.                        :
MORNINGSTAR, and BRADLEY                               :
JOHNSON,                                               :
                                                       :
           Defendants.                                 :
-------------------------------------------------------x

## <u>MEMORANDUM OPINION</u>

    Before the Court are two motions to dismiss (the "<u>Motions to Dismiss</u>") claims for breach

of fiduciary duties, aiding and abetting breach of fiduciary duties, fraudulent transfer under

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Bonitz Brothers, Inc. (4441); Ellett Brothers, LLC (7069); Evans Sports, Inc. (2654); Jerry's Sports, Inc. (4289); Outdoor Sports Headquarters, Inc. (4548); Quality Boxes, Inc. (0287); Simmons Guns Specialties, Inc. (4364); SportCo Holdings, Inc. (0355); and United Sporting Companies, Inc. (5758). The location of the Debtors' corporate headquarters and the service address for all Debtors is 267 Columbia Ave., Chapin, South Carolina 29036.

federal and state law and corporate waste.  For the reasons stated below, the Motions to Dismiss are granted in part and denied in part.

**Background**[2]

SportCo Holdings, Inc. and various affiliates ("SportCo" or the "Debtors") filed for relief under chapter 11 of the Bankruptcy Code on June 10, 2019.  On November 6, 2019, the Court confirmed the *Debtors' Fourth Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* (the "Plan").  On November 21, 2019, the Plan went effective, establishing the SportCo Creditors' Liquidation Trust (the "Trust").

On April 2, 2020, Ronald Friedman, as trustee for the Trust (the "Trustee"), commenced this adversary proceeding against the Debtors' former private equity sponsor and certain of its affiliates, Wellspring Capital Management, LLC, Wellspring Capital Partners IV, L.P., WCM GenPar IV, L.P. and WCM GenPar IV GP, LLC (collectively, "Wellspring Capital"), and certain of the Debtors' former directors and officers, Alexander E. Carles, William F. Dawson, Jr., John E. Morningstar (collectively the "Wellspring Directors" and, together with Wellspring Capital, the "Wellspring Defendants") and Bradley Johnson (together with the Wellspring Directors, the "D&O Defendants") (collectively, the "Defendants").  The Complaint alleges that the Wellspring Directors served as directors or officers of both Wellspring Capital and SportCo.[3]

On July 6, 2020, Defendant Johnson and the Wellspring Defendants separately moved to dismiss the complaint [D.I. 1] (the "Complaint") in its entirety for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, incorporated by Rule 7012(b) of the

---

[2] D.I. references are to the docket in this adversary proceeding, *Friedman v. Wellspring Capital Management, LLC, et al.*, Case No. 20-50554 (JKS).

[3] Compl. ¶¶ 28–30.  The Complaint does not state with which Wellspring Capital entities each of the Wellspring Directors was associated.

Federal Rules of Bankruptcy Procedure [D.I. 15, 18].  On August 17, 2020, the Trustee filed a

response to the Motions to Dismiss [D.I. 24].  The Defendants filed replies on September 11,

2020 [D.I. 24, 26].  Oral argument (the "Hearing") was held on July 22, 2021 [D.I. 37].

### Factual Allegations

The Complaint concerns four prepetition activities of the Defendants: (1) the 2018

acquisition of the assets of one of SportCo's competitors, AcuSport Corporation (the "AcuSport

Acquisition"); (2) a failed out of court restructuring preceding the Debtors' bankruptcy filing

(the "Failed Out of Court Restructuring"); (3) increases in the total compensation of the Debtors'

then president and CEO, Defendant Johnson (the "Johnson Compensation"); and (4) the Debtors'

payment of travel expenses (the "Travel Expenses").  For the purposes of the Motions to

Dismiss, the Court accepts all the Complaint's well-pleaded facts as true and disregards its legal

conclusions.[4]

### 1.    AcuSport Acquisition

In late 2017, the D&O Defendants considered merging SportCo with AcuSport

Corporation ("AcuSport").  The D&O Defendants discussed the potential merger in emails

expressing varying levels of skepticism.[5]  While the D&O Defendants were investigating

merging with AcuSport, they also discussed the potential transaction with SportCo's secured

lenders, urging them to permit the AcuSport Acquisition.[6]  Ultimately, a merger with AcuSport

never occurred.

---

[4] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).
[5] Compl. ¶¶ 82–86.
[6] *Id.* ¶¶ 87–89.

Subsequently, the D&O Defendants sought to acquire AcuSport's assets through the AcuSport Acquisition.  In preparation, the D&O Defendants pitched the AcuSport Acquisition to the Debtors' board of directors (the "<u>Board</u>") and secured lenders in or around late 2017.[7]  In the pitch, the D&O Defendants indicated "that, as part of the AcuSport Acquisition, the Debtors would acquire $14 million worth of AcuSport inventory and would immediately realize a $7 million profit on such inventory."[8]  In early 2018, Wellspring Capital notified SportCo's secured lenders that SportCo would default on a $4.7 million interest payment due in the second quarter of 2018.[9]  On May 3, 2018, SportCo agreed to acquire AcuSport's assets in bankruptcy for $7 million.[10]  A May 19, 2018 presentation to SportCo's vendors stated that SportCo was planning to pick up 30% of AcuSport's revenue following the acquisition, amounting to $150 million annually.[11]

The AcuSport Acquisition was not a success.  AcuSport's inventory, which the D&O Defendants thought would sell for $14 million, sold for $139,000.[12]  Additionally, it cost SportCo $970,000 to build out servers acquired from AcuSport.[13]  To use software acquired from AcuSport, SportCo needed to pay $220,000 for a license extension.[14]  Starting and integrating an inventory management system SportCo acquired from AcuSport required an investment of $1.5 million over twelve months.[15]  Following the acquisition, vendors withheld shipments to

---

[7] *Id.* ¶ 79.
[8] *Id.* ¶ 80.
[9] *Id.* ¶ 76.
[10] *Id.* ¶¶ 8, 78 n.4, 100.
[11] *Id.* ¶ 81.
[12] *Id.* ¶ 12.
[13] *Id.* ¶ 106.
[14] *Id.* ¶¶ 110–11.
[15] *Id.* ¶ 109.

4

SportCo and refused to ship without insurance or payment in advance, and two of SportCo's trade insurers dropped coverage.[16]

## 2.    Failed Out of Court Restructuring

The Complaint alleges that, as a result of the AcuSport Acquisition, in the fall of 2018 the Debtors found themselves potentially in breach of their obligations under SportCo's secured loan agreements—2012 first and second lien secured loans of $280 million and a 2013 supplemental loan of $60 million under an amendment to the Debtors' 2012 second lien agreement.[17]  On September 8, 2018, Defendant Johnson told Prospect Capital Corporation, the administrative agent on its second lien loan, that the Debtors may be in breach of their current fixed asset coverage ratio.[18]  On October 27, 2018, Defendant Johnson determined it was necessary to obtain a waiver or forbearance.[19]  The same day, Defendant Johnson reported that certain of SportCo's secured lenders were willing to waive a portion of the principal and interest owed to them in exchange for a majority equity interest in SportCo.[20]  In late 2018, the D&O Defendants considered restructuring SportCo's debt out of court.[21]

On November 9, 2018, the Debtors exchanged a term sheet with various second lien lenders for a proposed restructuring of SportCo's second lien debt.[22]  Internally, the D&O Defendants discussed the need for broad releases from SportCo's secured lenders in connection

---

[16] *Id.* ¶¶ 102–05.
[17] *Id.* ¶¶ 43, 46, 125; *Declaration of M. Paige Valeski in Support of the Wellspring Defendants' Motion to Dismiss* Ex. 5 [D.I. 20] (the "Valeski Declaration").  The Complaint does not specify which lenders were in restructuring negotiations with SportCo but indicates that both first lien and second lien lenders were involved.  Compl. ¶ 128. Separately, the Complaint states that the Debtors exchanged a term sheet with their second lien lenders.  Compl. ¶ 129.  The exhibits to the Valeski Declaration are not relied on in any ruling herein.
[18] Compl. ¶ 126; *Valeski Decl.* Ex. 3.
[19] Compl. ¶ 126.  The Complaint does not indicate what sort of waiver or forbearance Defendant Johnson determined was necessary.  Ultimately, the Debtors obtained a waiver of interest payments.  Compl. ¶ 99.
[20] *Id.* ¶ 127.
[21] *Id.* ¶ 15.
[22] *Id.* ¶¶ 15–16, 129.

with any proposed restructuring.[23]  On December 26, 2018, the Debtors sent the secured lenders a revised term sheet including releases and indemnification language.[24]  In turn, the secured lenders stated the releases were an issue.[25]  The D&O Defendants refused to agree to any restructuring that did not contain releases for the benefit of the Defendants, and an out of court restructuring did not occur.[26]  On December 31, 2018, the Debtors defaulted on the 2012 and 2013 loans.[27]  The Debtors filed for bankruptcy the following June.[28]

**3.    The Johnson Compensation**

Defendant Johnson's compensation increased in the years leading up to the bankruptcy. In December 2016, SportCo paid Defendant Johnson a bonus of at least $112,500 (the "Johnson Crosman Bonus").[29]  A December 19, 2016 email from SportCo's CFO indicated that the bonus was paid on account of services Defendant Johnson performed for another Wellspring Capital entity, Crosman Corporation ("Crosman"), and was unrelated to his work for SportCo.[30]  The following year, in December 2017, Defendant Johnson's base salary was increased from $600,000 to $1 million per year (the "Johnson Salary Increase").[31]  At that time, Defendant Johnson was also awarded a bonus of $100,000 per quarter through December 31, 2019, subject to his remaining at SportCo through December 31, 2019, and barring a change of control (the "Johnson Quarterly Bonuses").[32]

---

[23] *Id.* ¶ 135.
[24] *Id.* ¶ 137.
[25] *Id.* ¶ 138.
[26] *Id.* ¶ 19.
[27] *Id.* ¶ 144.
[28] *Id.* ¶¶ 21, 144.
[29] *Id.* ¶ 56.
[30] *Id.* ¶ 56.
[31] *Id.* ¶ 91.
[32] *Id.* ¶ 92.

4.    **Travel Expenses**

In 2017 and 2018, SportCo funds were used to pay for four trips.  In April 2017, the D&O Defendants and other individuals attended the 2017 Masters Tournament (the "Masters Trip").[33]  SportCo paid for the attendees' tickets, lodging and meals at the Champions Retreat for at least three days.[34]  In December 2017, SportCo paid the expenses (excluding air transportation) of 10 people, including the D&O Defendants, to travel to Argentina for four days (the "Argentina Trip").[35]  The Argentina Trip cost approximately $40,000.[36]  In February 2018, SportCo paid for Defendant Johnson and five guests to visit the Ice Hotel in Jukkasjärvi, Sweden for three nights (the "Ice Hotel Trip").[37]  The Ice Hotel Trip cost approximately $18,138.[38]  Later in 2018, the Debtors paid for 20 people, including SportCo employees, to travel to Bermuda for three nights (the "Bermuda Trip").[39]  The purported purpose of the Bermuda Trip was to celebrate the AcuSport Acquisition.[40]  The Complaint alleges SportCo incurred a total of $165,813 in expenses related to the AcuSport Acquisition, including the Bermuda Trip.[41]

## Jurisdiction

The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b).  This action involves both core and non-core proceedings under 28 U.S.C. § 157(b)(2).  The Fraudulent Transfer Counts are core proceedings, and the Fiduciary Duty Counts and the Corporate Waste Count are non-core proceedings.  The parties consent to entry of

---

[33] *Id.* ¶¶ 63–64.
[34] *Id.* ¶¶ 64–65.
[35] *Id.* ¶¶ 66–69.
[36] *Id.* ¶ 67.
[37] *Id.* ¶¶ 69–70.
[38] *Id.* ¶ 70.
[39] *Id.* ¶ 121.
[40] *Id.*
[41] *Id.* ¶ 122.

a final order or judgment by the Court on the Motions to Dismiss.[42]  Venue is proper in this

District under 28 U.S.C. § 1409(a).

## **Standard of Review**

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be

granted."[43]  Rule 12(b)(6) is related to Rule 8(a)(2), which requires that a pleading contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."[44]  When a

complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not

need detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."[45]  Two "working principles" underly this pleading

standard:

> First, the tenet that a court must accept a complaint's allegations as
> true is inapplicable to threadbare recitals of a cause of action's
> elements, supported by mere conclusory statements.  Second,
> determining whether a complaint states a plausible claim is
> context-specific, requiring the reviewing court to draw on its
> experience and common sense. [46]

Under this pleading standard, a complaint must nudge claims "across the line from conceivable

to plausible."[47]  The movant carries the burden of showing that dismissal is appropriate.[48]

Interpreting this pleading standard, the Third Circuit instructs courts to follow a three-

part analysis.  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a

---

[42] Hr'g Tr. 7:6–7; 47:19–20.
[43] Fed. R. Civ. P. 12(b)(6).
[44] *Id.* 8(a)(2).
[45] *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (cleaned up).
[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (citation omitted).
[47] *Twombly*, 550 U.S. at 570.
[48] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

claim.'"[49]  Second, the court must separate the factual and legal elements of the claim, accepting

all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[50]  Third,

the court must determine whether the facts alleged in the complaint are sufficient to show that

the plaintiff has a plausible claim for relief.[51]  After conducting this analysis, the court may

conclude that a claim has facial plausibility when the pleaded factual content allows the court to

draw the reasonable inference that the defendant is liable for the alleged misconduct.[52]

Moreover, a heightened pleading standard is applicable to allegations of fraudulent

transfer.[53]  Rule 9(b), made applicable by Bankruptcy Rule 7009, supplies this heightened

standard:

> In alleging fraud or mistake, a party must state with particularity
> the circumstances constituting fraud or mistake.  Malice, intent,
> knowledge, and other conditions of a person's mind may be
> alleged generally.[54]

Rule 9(b) requires plaintiffs to plead the "who, what, where, when, how, and why" of a

fraudulent transfer claim.[55]  The Third Circuit has explained that the purpose of Rule 9(b)'s

requirement that plaintiffs plead the "circumstances" of the alleged fraud with particularity is to

"place the defendants on notice of the precise misconduct with which they are charged, and to

safeguard defendants against spurious charges of immoral and fraudulent behavior."[56]  However,

---

[49] *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675).
[50] *Id.  See also Fowler*, 578 F.3d at 210 (citing *Iqbal*, 556 U.S. at 679).
[51] *Santiago*, 629 F.3d at 130.
[52] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[53] *Pa. Emp. Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 478 (D. Del. 2010).
[54] Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.
[55] *See Gerbitz v. ING Bank*, 967 F. Supp. 2d 1072, 1078 (D. Del. 2013).  *But see Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) ("Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud").
[56] *Seville Indus. Mach. Corp.*, 742 F.2d at 791.

Rule 9's "requirements . . . are relaxed in the bankruptcy context, particularly in cases . . . in which a trustee has been appointed."[57]

### Choice of Law

Before evaluating the state law claims, the Court must decide what state law governs those claims.[58]   The Complaint does not allege what state law applies.[59]   The Wellspring Defendants argue that Delaware law applies, and Defendant Johnson argues that South Carolina law applies but asserts that dismissal of the state law claims is appropriate under either South Carolina or Delaware law.[60]

The choice-of-law rules of Delaware apply.[61]   The first step in Delaware's choice-of-law analysis is to determine whether a conflict of laws exists at all.   If the various state laws that might apply are not materially different, then there is a false conflict, and the forum state's law applies.[62]   If there is a material difference, the Court applies the "most significant relationship" test to determine what law should apply.[63]

There is no conflict between South Carolina and Delaware fraudulent transfer law because both Delaware and South Carolina have enacted the Uniform Fraudulent Transfers Act

---

[57] *Zazzali v. Mott (In re DBSI, Inc.)*, 445 B.R. 344, 347–348 (Bankr. D. Del. 2011).
[58] Counts 1 through 4 involve state law claims for breach of fiduciary duties and the aiding and abetting thereof; Counts 5, 6, 9, 10, 13 and 14 involve state law claims for actual or constructive fraudulent conveyance; and Count 17 involves a state law claim for corporate waste.
[59] Although failure to allege which state law applies to state law claims may be an independent basis for dismissal, the Court considers the merits of the Trustee's allegations.  *See In re Global Link Telecom Corp.*, 327 B.R. at 718.
[60] Hr'g Tr. 7:11–16; *Defendant Bradley Johnson's Opening Brief in Support of His Motion to Dismiss Plaintiff's Complaint* 10 n.9 [D.I. 16].
[61] *See LaSala v. Bordier et Cie*, 519 F.3d 121, 140 (3d Cir. 2008).  *See also PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.)*, 128 F. App'x 839, 843 (3d Cir. 2005).
[62] *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms. LP*, C.A. No. N04C-11-191 VLM, 2015 WL 4111826, at *5, 2015 Del. Super. LEXIS 327, at *12 (Del. Super. Ct. July 8, 2015).
[63] *Id.*

and the Uniform Voidable Transfers Act.[64]  The Court thus applies Delaware law to the

Trustee's state law claims for actual and constructive fraudulent conveyance.

The "internal affairs" doctrine governs the Fiduciary Duty Counts and the Corporate

Waste Count (defined below).[65]  Under the internal affairs doctrine, matters unique to

relationships among the corporation and officers, directors and shareholders are governed by the

law of the state of incorporation.[66]  The entities at which the alleged misconduct took place are

incorporated in Delaware.  Consequently, Delaware law applies to the Trustee's claims for

breach of fiduciary duties and corporate waste.[67]

## Discussion

The 17-count Complaint alleges breach of fiduciary duties and aiding and abetting breach

of fiduciary duties (Counts 1 through 4, the "Fiduciary Duty Counts"), fraudulent transfer under

federal and state law (Counts 5 through 16, the "Fraudulent Transfer Counts") and corporate

waste (Count 17, the "Corporate Waste Count").  The bases for the Fiduciary Duty Counts are

the AcuSport Acquisition and the Failed Out of Court Restructuring.  The basis for the

Fraudulent Transfer Counts is the Johnson Compensation.  The basis for the Corporate Waste

Count is the payment of the Travel Expenses.

---

[64] The Trustee has pleaded no difference in the Delaware and South Carolina statutes.  *See generally* Compl.

[65] *See NHB Assignments LLC v. Gen. Atl. LLC (In re PMTS Liquidity Corp.)*, 452 B.R. 498, 507 (Bankr. D. Del. 2011).

[66] *NHB Assignments LLC*, 452 B.R. at 507; *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In Re Fedders N. Am., Inc.)*, 405 B.R. 527, 539 (Bankr. D. Del. 2009) (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)) ("Under the internal affairs doctrine, only one state has the authority to regulate a corporation's internal affairs.").

[67] Further, the Trustee acknowledges that Delaware law applies to the claims for breach of fiduciary duties.  Hr'g Tr. 47:22–23.

1.      **The Fiduciary Duty Counts**

Counts 1 and 3 allege that the D&O Defendants breached their fiduciary duties of care and loyalty by entering into the AcuSport Acquisition and failing to enter into an out of court restructuring.

a.      <u>The Fiduciary Duties of Care and Loyalty</u>

Under Delaware law, corporate officers and directors owe the corporations they serve duties of care and loyalty to "strive in good faith and on an informed basis to maximize the value of the corporation for the benefit of its residual claimants, the ultimate beneficiaries of the firm's value."[68]  When alleging breach of fiduciary duties, "to survive a motion to dismiss under Rule 12(b)(6), the Trustee must 'plead around the business judgment rule.'"[69]  When assessing claims for breach of fiduciary duties, the Court bears in mind that a director does not become "a guarantor of success" by choosing to continue a firm's operations when it may be insolvent.[70]

i.      *The Duty of Care*

The duty of care "requires that directors of a Delaware corporation both: (1) 'use that amount of care which ordinarily careful and prudent men would use in similar circumstances'; and (2) 'consider all material information reasonably available.'"[71]  "The duty of care has been

---

[68] *Quadrant Structured Prods. Co., v. Vertin*, 102 A.3d 155, 172 (Del. Ch. 2014).

[69] *Joseph v. Frank (In Re Troll Commc'ns, LLC)*, 385 B.R. 110, 118 (Bankr. D. Del. 2008) (quoting *Stanziale v. Nachtomi (In Re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005)).  Furthermore, "Under Delaware law, the business judgment rule presumes that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Liquidation Trust of Solutions Liquidation LLC v. Stienes (In re Solutions Liquidation LLC)*, 608 B.R. 384, 402 (Bankr. D. Del. 2019) (quoting *Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*, 906 A.2d 27, 52 (Del. 2006)) (cleaned up).

[70] *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 174 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007).

[71] *Bridgeport Holdings Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, Inc.)*, 388 B.R. 548, 568 (Bankr. D. Del. 2008) (quoting *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005)).

described as the duty to act on an informed basis."[72] "[D]uty of care violations are actionable only if the directors acted with gross negligence," which is "rarely found."[73] Gross negligence is "conduct that constitutes reckless indifference or actions that are without the bounds of reason."[74]

### ii.     The Duty of Loyalty

"The duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholders and not shared by the stockholders generally."[75] "A director is interested in a transaction if 'he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders' or if 'a corporate decision will have a material detrimental impact on a director, but not on the corporation and the stockholders.'"[76] The private benefit to the director must be "of a sufficiently material importance, in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties . . . without being influenced by her overriding personal interest."[77]

Additionally, "[a]cts taken in bad faith breach the duty of loyalty."[78]

> To state a bad-faith claim, a plaintiff must show either an extreme set of facts to establish that disinterested directors were intentionally disregarding their duties, or that the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.[79]

---

[72] *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 41 (Bankr. D. Del. 2011).

[73] *In re Walt Disney*, 907 A.2d at 750.

[74] *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008).

[75] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) (cleaned up).

[76] *In re Trados Inc. S'holder Litig.*, C.A. 1512-CC, 2009 WL 2225958, at *6, 2009 Del. Ch. LEXIS 128, at *22 (Del. Ch. July 24, 2009) (quoting *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993)).

[77] *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999).

[78] *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007).

[79] *In re Chelsea Therapeutics Int'l Ltd. S'holders Litig.*, No. 9640-VCG, 2016 WL 3044721, at *7, 2016 Del. Ch.

A complaint for breach of duty of loyalty may be dismissed where it "is devoid entirely of factual support to establish that the transaction was self-interested."[80]

b.    <u>Count 1: The AcuSport Acquisition</u>

Count 1 alleges that the D&O Defendants breached their fiduciary duties of care and loyalty in connection with the AcuSport Acquisition.

i.    *Count 1's Duty of Care Allegations*

The Trustee alleges that the D&O Defendants breached their fiduciary duty of care owed to the Debtors by "failing to conduct adequate diligence and mis-valuing (or intentionally misrepresenting the value of) the AcuSport Acquisition and approving the AcuSport Acquisition on the basis of the incorrect or misrepresented value thereof."[81]

In support of the duty of care allegations, the Complaint states that in early 2018, Wellspring Capital notified SportCo's secured lenders that SportCo would default on a $4.7 million interest payment due in the second quarter of 2018.[82]   Faced with a potential default, the D&O Defendants pitched the AcuSport Acquisition to the Board and SportCo's secured lenders.[83]   On May 3, 2018, SportCo agreed to acquire AcuSport's assets in bankruptcy for $7 million, spending "effectively, the Debtors' last available cash."[84]   The D&O Defendants represented to their secured lenders that, as part of the acquisition, the Debtors would acquire

---

LEXIS 79, at *22 (Del. Ch. May 20, 2016) (cleaned up).
[80] *Stienes*, 608 B.R. at 402.
[81] The Court need not address the Defendants' arguments concerning the exculpation clause because affirmative defenses, such as exculpation, may not be considered at the motion to dismiss stage.  *Guiliano v. Schnabel (In re DSI Renal HC)*, 574 B.R. 446, 471 (Bankr. D. Del. 2017) (citing *Miller v. McCown De Leeuw & Co. (In re The Brown Sch.)*, 368 B.R. 394, 401 (Bankr. D. Del. 2007)).
[82] Compl. ¶ 76.
[83] *Id.* ¶¶ 77, 79.
[84] *Id.* ¶¶ 8, 100.

$14 million worth of AcuSport inventory and realize $7 million in profits, but the inventory actually sold for $139,000.[85]

The Complaint further alleges that following the acquisition, vendors withheld shipments to SportCo and refused to ship without insurance or payment in advance, and two of SportCo's trade insurers dropped coverage.[86]  The acquisition resulted in unanticipated additional operational expenses: $970,000 to build out servers,[87] $220,000 for a license extension to use software,[88] and $1.5 million over 12 months to start and integrate an inventory management system.[89]  According to the Complaint, a SportCo financial advisor described the AcuSport Acquisition in retrospect as a "marginal investment" that resulted in no incremental increase in sales but a $2.3 million increase in costs to pay the SportCo's sales force.[90]

The D&O Defendants argue that the Trustee fails to plead a breach of the duty of care adequately.  The D&O Defendants contend, among other things, that the pitch of the AcuSport Acquisition to the Board and secured lenders demonstrates that the D&O Defendants conducted due diligence, and the Board's approval of the transaction implies that the AcuSport Acquisition was undertaken in the best interests of the Debtors.  They also claim the secured lenders' independent approval of the AcuSport Acquisition and willingness to waive interest suggests the transaction was undertaken with due care.

Despite the Board's approval of the transaction and the secured lenders' waiver of interest payments, the Complaint states a plausible claim for a breach of the duty of care.  The

---

[85] *Id.* ¶ 12.
[86] *Id.* ¶¶ 102–05.
[87] *Id.* ¶ 106.
[88] *Id.* ¶¶ 110–11.
[89] *Id.* ¶ 109.
[90] *Id.* ¶¶ 13, 114.

disparity between the D&O Defendants' expectations and the actual economic gain from the AcuSport Acquisition is considerable, as were the acquisition's unanticipated negative business implications.  These facts, when viewed in the light most favorable to the Trustee, give rise to the reasonable inference that the D&O Defendants may have failed to inform themselves fully in undertaking the AcuSport Acquisition.

ii.    *Count 1's Duty of Loyalty Allegations*

The Complaint alleges that the D&O Defendants promoted the AcuSport Acquisition "because each D&O Defendant individually stood to receive substantial additional value if the Debtors' lenders waived the Debtors' interest payments, and in doing so, the D&O Defendants breached their duty of loyalty owed to the Debtors."[91]  The Trustee seems to suggest that the D&O Defendants' private motive for promoting the AcuSport Acquisition was "to induce the Debtors' lenders to forbear on interest payments they were owed."[92]  By inducing the Debtors' secured lenders to forbear, the Trustee essentially argues, the D&O Defendants had more time to continue to compensate their president and CEO, Defendant Johnson, and direct the Debtors to pay for the D&O Defendants' Travel Expenses.

The Trustee has not alleged any fact that tends to show the D&O Defendants were self-interested.  The Complaint's allegation that the D&O Defendants undertook the AcuSport Acquisition because the D&O Defendants wanted SportCo to continue operating does not on its face describe a private interest that would support a claim for breach of the duty of loyalty.  The D&O Defendants did not stand on both sides of the AcuSport Acquisition, and the Trustee has not alleged any fact that would show that the D&O Defendants personally benefited from the

---

[91] *Id.* ¶ 152.
[92] *Id.* ¶ 77 (cleaned up).

16

transaction to an extent not shared with SportCo's stakeholders or that the transaction was undertaken in bad faith. The facts alleged in the Complaint, when viewed in the light most favorable to the Trustee, do not give rise to the reasonable inference that the D&O Defendants breached their duty of loyalty in approving the AcuSport Acquisition.

Therefore, the Motions to Dismiss Count 1 are denied as to the allegation of the breach of the duty of care and granted as to the allegation of the breach of the duty of loyalty. The Trustee is granted leave to amend the Complaint to replead Count 1.

      c.    <u>Count 3: The Failed Out of Court Restructuring</u>

Count 3 alleges that the D&O Defendants breached their fiduciary duties of care and loyalty by failing to restructure SportCo's debt out of court.

      i.    *Count 3's Duty of Care Allegations*

Turning to the breach of the duty of care, it is not immediately clear what allegations in the Complaint support this claim.[93] The Trustee explained the duty of care claim regarding the Failed Out of Court Restructuring at the Hearing:

---

[93] At the Hearing, the Court requested that the Trustee clarify what allegations in the Complaint establish gross negligence, as to the duty of care allegations, and self-interestedness, as to the duty of loyalty allegations. Hr'g Tr. 64:25, 65:1–4, 7–9. The Trustee responded that paragraphs 151 through 153 and 166 to 170 of the Complaint establish gross negligence, and paragraphs 166 through 168 establish self-interestedness. Hr'g Tr. 76:8–10, 12–13. The Trustee also indicated that paragraphs 45, 53 through 60, 61 through 74, 76 through 80, 86 through 96, and 90 through 93 are "mixed allegations." Hr'g Tr. 76:12–16. The Court considered each of the Trustee's responses, but the responses ultimately did not change the Court's ruling. Paragraphs 151 through 153 and 166 through 170 are essentially recitations of the elements of the breach of the duty of care loosely placed in the context of the facts of this case, or conclusory statements, rather than allegations of facts that would show gross negligence or the breach of the duty of care. Paragraphs 166 through 168, as allegations of self-interestedness, also fail as threadbare conclusory statements and recitations of the elements of the breach of the duty of loyalty in the context of the facts of this case. Paragraph 45 of the Complaint is irrelevant to either claim because the use of the 2012 and 2013 loans is "not the subject of the claims raised" in the Complaint. Compl. ¶ 41 n.2. Paragraphs 53 through 60 contain allegations relating to the Johnson Compensation and do not relate to the AcuSport Acquisition or the Failed Out of Court Restructuring. Paragraphs 61 through 74 contain allegations relating to the Travel Expenses and not the AcuSport Acquisition or the Failed Out of Court Restructuring. Paragraphs 76 through 80 and 86 through 96 contain a mix of allegations relating to the AcuSport Acquisition and conclusory statements but, for the reasons explained herein, the allegations are insufficient to support a claim of breach of the duties of care or loyalty. The

> Our duty of care claims arising from [the Failed Out of Court
> Restructuring] allege that [the D&O Defendants] failed to take any
> action in the face of insolvency.  Now, there's an argument that
> they were taking action, but in reality, they only wanted to take
> actions that benefited themselves.
>
> So, specifically, in a case with SportCo's impending default on the
> 2012 loan and the 2013 loan, they rejected . . . [an] option to save
> the company in an attempt to evade personal liability that they and
> Wellspring faced and they plunged us into bankruptcy.[94]

The Trustee thus acknowledges that the Complaint describes actions the D&O Defendants took

to address SportCo's alleged insolvency: The Complaint states that the D&O Defendants

engaged in discussions with the Debtors' secured lenders regarding a potential restructuring

beginning in September 2018, including the exchange of the term sheet, months before the

Debtors' bankruptcy filing in June 2019.[95]  The assertion that the D&O Defendants took actions

to respond to SportCo's alleged insolvency because "they only wanted to take actions that

benefited themselves" would not on its face establish a breach of the fiduciary duty of care.[96]

Read as a whole, the Complaint does not allege facts that would support the conclusion

that the D&O Defendants failed to inform themselves adequately in rejecting the proposed out of

court restructuring or that such action amounted to gross negligence.[97]

ii.    *Count 3's Duty of Loyalty Allegations*

Count 3 also alleges that the D&O Defendants breached their fiduciary duty of loyalty by

failing to restructure SportCo's debt out of court:

---

Court acknowledges that each count "repeats and re-alleges each of the allegations set forth above and below as if full set forth [t]herein."  *See, e.g.*, Compl. ¶¶ 147, 157.

[94] Hr'g Tr. 71:9–19.

[95] Compl. ¶¶ 128–129.

[96] Hr'g Tr. 71:12–13.

[97] *See Trenwick*, 906 A.2d at 205 ("If a plaintiff cannot state a claim that the directors of an insolvent corporation acted disloyally or without due care in implementing a business strategy, it may not cure that deficiency simply by alleging that the corporation became more insolvent as a result of the failed strategy.").

> The D&O Defendants refused, at the last minute, to execute any
> debt restructuring agreement that did not include broad release and
> indemnification language in favor of the D&O Defendants and
> Wellspring Capital because they, and not the Debtors' creditors,
> stood to receive substantial value if the Debtors' debt restructuring
> agreement included such provisions.[98]

In doing so, the D&O Defendants, the Complaint alleges, "placed their own self-interests above those of their fiduciaries—specifically, the Debtors—and permitted the Debtors to breach their loan covenants instead of entering into a restructuring agreement that did not provide the D&O Defendants or Wellspring Capital with releases and the benefit of indemnification."[99]

In response, the D&O Defendants argue that under Delaware law it is not necessarily a breach of a director's fiduciary duty of care or loyalty to negotiate for release or indemnification by a creditor due to fear of subsequent litigation.[100] Under the circumstances, the D&O Defendants assert, individual releases would not have been a "private interest" because the benefit would have been shared with restructured SportCo: Individual releases may have saved the post-restructuring company the expense of indemnifying the D&O Defendants in connection with any litigation that would arise following a change of control in connection with a restructuring.[101]

Ultimately, however, the extent to which individual releases might have benefitted SportCo is a partly factual question because it involves the nature and extent of the D&O Defendants' entitlements to indemnification and other matters this Court cannot now resolve. Drawing all inferences in favor of the Trustee, the Complaint contains sufficient allegations

---

[98] Compl. ¶ 166.
[99] *Id.* ¶ 168.
[100] *See Edgewater Growth Cap. Partners LP v. H.I.G. Cap., Inc.*, 68 A.3d 197, 231–32 (Del. Ch. 2013).
[101] Hr'g Tr. 81:9–18.

reasonably to infer that the D&O Defendants breached their duty of loyalty regarding the Failed Out of Court Restructuring.

Therefore, the Motions to Dismiss Count 3 are granted as to the breach of the duty of care allegations and denied as to the breach of the duty of loyalty allegations. The Trustee is granted leave to amend the Complaint to replead Count 3.

d.   The Resignation of Defendants Dawson and Morningstar

Defendants Dawson and Morningstar seek to dismiss all counts against them involving any action taken after their April 26, 2018 resignation from the Board pursuant to a written stockholder consent (the "Stockholder Consent").[102]  Both the AcuSport Acquisition and the Failed Out of Court Restructuring occurred after that date:[103] The AcuSport asset purchase agreement was executed on May 3, 2018, a week after the Wellspring Directors' departure from the Board, and it was not until September 8, 2018, that Defendant Johnson informed SportCo's secured lenders of the potential breach of a covenant, catalyzing the Failed Out of Court Restructuring.[104]

The Complaint does not allege that Defendants Dawson or Morningstar were on the Board when either the AcuSport Acquisition or the Failed Out of Court Restructuring occurred:

> Defendant William F. Dawson, Jr. ("Dawson") is an individual who *at all relevant times* was the Chief Executive Officer of Wellspring Capital. Dawson also served as a director of SportCo and its subsidiaries.[105]

> Defendants John E. Morningstar ("Morningstar") is an individual who *at all relevant times* was a Managing Partner of Wellspring

---

[102] *Memorandum of Law in Support of the Wellspring Defendants' Motion to Dismiss the Complaint* 11 [D.I. 19].
[103] The Bermuda Trip, part of the Corporate Waste Count, also took place following the departure of Defendants Dawson and Morningstar from the Board.  As explained below, the Corporate Waste Count is dismissed as against all Defendants.  *See infra* pp. 33–34.
[104] Compl. ¶ 126.
[105] *Id.* ¶ 29 (emphasis added).

Capital.  Morningstar also served as a director of SportCo and its
subsidiaries.[106]

The Complaint alleges that Defendants Dawson and Morningstar were officers of Wellspring

Capital for "all relevant times" but does not make this allegation as to their positions on the

Board.[107]

Defendants Dawson and Morningstar state that the Trustee possessed the Stockholder

Consent—which establishes the departure of Defendants Dawson and Morningstar from the

Board—since 2019.[108]  The Complaint was filed on April 2, 2020.  The Trustee does not deny

that the Trust had possession of the Stockholder Consent or dispute the underlying assertion that

Defendants Dawson and Morningstar departed the Board on April 26, 2018.[109]  But the Trustee

argues that it would be improper for the Court to consider the Stockholder Consent on a motion

to dismiss because it is not integral to or relied on in the Complaint.[110]  Furthermore, the Trustee

argues that he should have the opportunity to conduct discovery on the circumstances

surrounding the departure of Defendants Dawson and Morningstar from the Board.[111]

"In deciding a motion to dismiss, courts generally only consider the allegations contained

in the complaint, exhibits attached thereto, and matters of public record."[112]  However, the Court

may consider documents "'integral to or explicitly relied upon in the complaint' . . . 'without

converting the motion to dismiss into one for summary judgment.'"[113]  Moreover, "a court may

---

[106] *Id.* ¶ 30 (emphasis added).

[107] *Id.* ¶¶ 29–30.

[108] Hr'g Tr. 37:2–9.

[109] *Id.* 51:9–25.

[110] *Id.* 51:9–18.

[111] *Id.* 51:14–18.

[112] *Miller v. Bradley (In re W.J. Bradley Mortg. Cap., LLC)*, 598 B.R. 150, 164 (Bankr. D. Del. 2019).

[113] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Furthermore, "what is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  *Id.*

consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[114]  "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint— lack of notice to the plaintiff—is dissipated 'where the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'"[115]  "What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent."[116]

The Complaint and the Stockholder Consent are consistent: The Trustee does not allege that Defendants Dawson and Morningstar were directors of SportCo at "all relevant times," despite making that specific and distinct allegation for Defendants Dawson and Morningstar as officers of Wellspring Capital.  Although the Trustee argues he has not had the opportunity to conduct discovery regarding the circumstances of the departure of Defendants Dawson and Morningstar, the Trustee has not made any allegations in the Complaint concerning their departure.  The Stockholder Consent notwithstanding, the Complaint does not plead that Defendants Dawson and Morningstar were on the Board when the AcuSport Acquisition was approved or the Failed Out of Court Restructuring took place.

"Under established Delaware Law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the

---

[114] *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).
[115] *Schmidt*, 770 F.3d at 249 (quoting *Burlington Coat Factory*, 114 F.3d at 1426).
[116] *Burlington Coat Factory*, 114 F.3d at 1426.

alleged breach."[117]  In general, a former director owes no fiduciary duties to the corporation she previously served.[118]  Exceptions to this rule have been recognized where, for example, a director submitted fraudulent invoices to a corporation and then, after being removed from the board, attempted to intimidate the remaining directors into paying the invoices through harassment,[119] and where a director used information obtained during the pendency of the fiduciary relationship to harm the company following the director's departure from the company's board.[120]

Here, the Trustee seeks to hold Defendants Dawson and Morningstar liable for an action the Debtors took following their departure from the Board.  The Complaint does not adequately allege that Defendants Dawson and Morningstar were on the Board at the time the asset purchase agreement was executed, and thus there are not adequate allegations to infer that Defendants Dawson and Morningstar approved the AcuSport Acquisition.  The Complaint does not allege that Defendants Dawson and Morningstar continued to exercise control over the Board following their departure or used information gained during their tenure to influence the Board's decision to approve the AcuSport Acquisition.  The Complaint, furthermore, does not allege facts that would suggest any other exception to the rule that former directors are not fiduciaries should apply.

---

[117] *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1169 (Del. Ch. 2002) (cleaned up).

[118] *In re Walt Disney Derivative Litig.*, 907 A.2d at 758 ("Just as Delaware law does not require directors-to-be to comply with their fiduciary duties, former directors owe no fiduciary duties . . . .").

[119] *See BelCom, Inc. v. Robb*, No. 14663, 1998 WL 229527, at *3, 1998 Del. Ch. LEXIS 58, at *9 (Del. Ch. Apr. 28, 1998).

[120] *See Neurvana Med., LLC v. Balt USA, LLC*, No. 2019-0034-KSJM, 2020 WL 949917, at *12–13, 2020 Del. Ch. LEXIS 77, at *24–25 (Del. Ch. Feb. 27, 2020) (recognizing exception where former director used information the director had obtained during the fiduciary relationship to harm the company following his departure).

Therefore, the Wellspring Defendants' Motion to Dismiss Counts 1 and 3 is granted as to Defendants Dawson and Morningstar. The Trustee is granted leave to amend the Complaint to replead Counts 1 and 3.[121]

    e.    <u>Counts 2 and 4: Allegations that Wellspring Capital Aided and Abetted the D&O Defendants in their Breach of Fiduciary Duties</u>

In Counts 2 and 4, the Trustee asserts claims of aiding and abetting breach of fiduciary duties against Wellspring Capital for participating in the AcuSport Acquisition and the Failed Out of Court Restructuring.

A valid claim for aiding and abetting a breach of fiduciary duty requires the plaintiff to show that (1) a fiduciary relationship existed; (2) the fiduciary breached its duty; (3) a non-fiduciary defendant knowingly participated in a breach; and (4) damages to the plaintiff resulted from the concerted actions of the fiduciary and the nonfiduciary.[122] The knowledge of a director or officer may be imputed to a corporation she serves.[123]

As explained above, the Trustee has successfully pleaded claims for breach of fiduciary duties against certain of the D&O Defendants: Count 1 is not dismissed regarding Defendants Johnson's and Carles's alleged breaches of the duty of care as to the AcuSport Acquisition, and Count 3 is not dismissed regarding Defendant Johnson's and Carles's alleged breaches of the duty of loyalty as to the Failed Out of Court Restructuring. Therefore, the first and second prongs are satisfied.

It is not immediately clear whether the Trustee has satisfied the third or fourth prongs. The Complaint does not allege facts that would show knowing participation, damage resulting

---

[121] The Trustee is granted leave to amend Counts 1 and 3 also for the reasons explained above. *See supra* pp. 17, 20.
[122] *Fedders*, 405 B.R. at 543–44.
[123] *See Carlson v. Hallinan*, 925 A.2d 506, 542 & n.245 (Del. Ch. 2006).

from concerted action, or any element of aiding and abetting. The Complaint states, concerning

the Failed Out of Court Restructuring, that "Wellspring Capital (through Defendant Carles)

continued to negotiate the restructuring of Debtors' [second lien] debt."[124] The Complaint also

states that it was "at the behest of Wellspring Capital and the D&O Defendants" that SportCo

demanded individual releases for the D&O Defendants and Wellspring Capital in connection

with the Failed Out of Court Restructuring.[125] But beyond these conclusory statements, the

Complaint does not allege facts that would show Wellspring Capital acted in concert with either

Defendant Carles or Johnson. The Trustee clarified at the Hearing the basis of the aiding and

abetting counts:

> The individuals who are running this company are Wellspring
> people and they're pitching asset acquisition, they're pitching
> deals. Obviously, Wellspring is intimately involved with what's
> going on here. How could it not have aided and abetted when its
> managing partners and CEO are involved in the transaction, I don't
> understand.[126]

In response, the Wellspring Defendants argue that the Trustee has not sufficiently pleaded aiding

and abetting because the Complaint fails to differentiate among the companies comprising

Wellspring Capital—four separate and distinct entities.[127] Moreover, the Wellspring Defendants

argue that the Complaint fails to allege any fact about knowing participation.[128]

The Wellspring Defendants are correct. Sufficient facts have not been pleaded for the

Court to ask itself, "How could Wellspring Capital not have aided and abetted?" While

Defendant Carles's knowledge can be imputed to any Wellspring Capital entity for which he was

---

[124] Compl. ¶ 133.
[125] Compl. ¶¶ 19, 137.
[126] Hr'g Tr. 72:11–17 (cleaned up).
[127] *Id.* 45:21–25; 46:1–11.
[128] *Id.* 45:16–20.

a fiduciary when the alleged breach occurred, the Trustee has not alleged how any Wellspring

Capital entity acted in concert with Defendant Carles to effectuate his alleged breach of fiduciary

duties.[129]  No fact has been pleaded that would indicate any Wellspring Capital entity acted in

concert with Defendant Johnson.  Furthermore, the Trustee has not sufficiently differentiated

among the Wellspring Capital entities in making substantive allegations.  Viewing these facts in

the light most favorable to the Trustee, the Complaint does not give rise to the reasonable

inference that Wellspring Capital had knowledge of or participated in any breach of fiduciary

duty.

Therefore, the Wellspring Defendants' Motion to Dismiss Counts 2 and 4 is granted.  The

Trustee is granted leave to amend the Complaint to replead Counts 2 and 4.

## 2.    The Fraudulent Transfer Counts

The Trustee asserts claims for both actual and constructive fraudulent transfer under state

law and the Bankruptcy Code.  As explained above, Delaware's fraudulent transfer statute

governs the state law claims.[130]  Because Delaware's Uniform Fraudulent Transfer Act mirrors

Bankruptcy Code section 548(a), the Court considers these claims together.[131]

a.    Actual and Constructive Fraudulent Transfers

For an actual fraudulent transfer claim to survive a motion to dismiss, the plaintiff must

allege facts that, taken as true, establish direct or circumstantial evidence of intent to defraud.

---

[129] Nor has the Trustee alleged which Wellspring Capital entity or entities Defendant Carles served as Managing Partner.  Compl. ¶ 28.

[130] *See supra* p. 10.

[131] *See PHP Liquidating, LLC*, 128 F. App'x at 847 ("We need not discuss the [actual-intent fraudulent transfer] provisions of the Delaware Fraudulent Transfer Act . . . because they are substantially the same as the relevant parts of the Bankruptcy Code.").  *See also Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*, 879 F.3d 79, 86 (3d Cir. 2018).

Direct evidence is seldom available, and circumstantial evidence of intent is pleaded by alleging one or more "badges of fraud."[132]  Badges of fraud include the following:

> (i) the relationship between the debtor and the transferee;
> (ii) consideration for the conveyance; (iii) insolvency or
> indebtedness of the debtors; (iv) how much of the debtor's estate
> was transferred; (v) reservation of benefits; control or dominion by
> the debtor over the property transferred; and (vi) secrecy or
> concealment of the transaction.[133]

When analyzing whether badges of fraud have been sufficiently pleaded, the Court looks to the totality of the circumstances.[134]  Conclusory statements that badges of fraud are present are insufficient; the plaintiff must allege facts demonstrating that badges of fraud exist.[135]

A constructive fraudulent transfer claim does not require allegations of intent to defraud. For a constructive fraudulent transfer claim to survive a motion to dismiss, the plaintiff must allege facts showing that the debtor received less than reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time of the transfer.[136]  A constructive fraudulent transfer claim may be dismissed where a plaintiff does not plead facts regarding the value of what the debtor received in exchange[137] or does not make factual allegations showing that a debtor was insolvent at the time of the exchange or rendered insolvent by it.[138]

---

[132] *In re Bernier*, 282 B.R. 773, 781 (Bank. D. Del. 2002).

[133] *In re Direct Response Media, Inc.*, 466 B.R. 626, 653 (Bankr. D. Del. 2012) (citing *In re Hechinger Inv. Co., of Del.*, 327 B.R. 537, 551 (D. Del. 2005), *aff'd on other grounds*, 278 F. App'x 125 (3d Cir. 2008)).

[134] *In re Syntax-Brillian Corp.*, No. 08-11407 (BLS), 2016 WL 1165634, at *5, 2016 Bankr. LEXIS 988, at * 14 (Bankr. D. Del. Feb. 8, 2016) ("While the badges of fraud provide a basic rubric, courts examine the totality of the circumstances to determine whether fraudulent intent exists.").

[135] *See Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 520 (Bankr. D. Del. 2012).

[136] *See Burtch v. Harris (In re Harris)*, No. 02-10938 (MFW), 2003 WL 23096966, at *4, 2003 Bankr. LEXIS 1757, at *10 (Bankr. D. Del. Dec. 30, 2003).

[137] *See Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005).

[138] *See Huston*, 443 B.R. at 39.

b.    Counts 5 Through 8: The Johnson Crosman Bonus

Counts 5 through 8 allege that the Johnson Crosman Bonus was an actual or constructive fraudulent transfer under state and bankruptcy law.[139]  Each count for actual fraudulent transfer makes conclusory statements that the following badges of fraud were present: lack of consideration;[140] close relationship with the transferee;[141] and the Debtors insolvency at the time of each transfer or that the Debtors were rendered insolvent thereby.[142]

i.    *Count 5: State Law Actual Fraudulent Transfer*

Beyond conclusory allegations that badges of fraud were present, the Complaint goes on to allege facts that would only show lack of consideration as to the Johnson Crosman Bonus. According to the Complaint, SportCo's CFO indicated in an email that the Johnson Crosman Bonus was paid on account of Defendant Johnson's "work on Crosman—not USC" showing a lack of consideration.[143]  Crosman was another company owned by Wellspring Capital, but the Complaint alleges Crosman was not under the same "ownership umbrella as SportCo or any of the other Debtors."[144]

The other alleged badges of fraud, however, do not have adequate support in the Complaint.  Defendant Johnson's relationship to the Debtors was an employment relationship entitling him to compensation.[145]  The facts do not show that the transfers, relatively small sums compared to the Debtors aggregate liabilities at the time, rendered the Debtors insolvent. Moreover, the Johnson Crosman Bonus was paid on or around December 2016, and the Debtors

---

[139] Compl. ¶¶ 179, 191, 202, 215.
[140] *Id.* ¶¶ 183, 192, 206, 216, 231, 240, 254, 264, 279, 288, 302, 312.
[141] *Id.* ¶¶ 186, 197, 209, 221, 234, 245, 257, 269, 282, 293, 305, 317.
[142] *Id.* ¶¶ 184–85, 195–96, 207–08, 219–20, 232–33, 243–44, 255–56, 267–68, 280–81, 291–92, 303–04, 315–16.
[143] *Id.* ¶ 56.
[144] *Id.* ¶ 50.
[145] *Id.* ¶ 31.

did not notify their secured lenders of an imminent default on their interest payment until "early 2018;" SportCo did not breach a covenant until September 8, 2018, nearly two years later.[146] The Trustee thus has pleaded one viable badge of fraud: lack of consideration.  While lack of consideration may suggest that the payment of the Johnson Crosman Bonus was wrongful, the facts pleaded, considered in their totality, are insufficient as circumstantial evidence of intent to defraud.

Therefore, the Motions to Dismiss Count 5 are granted.  The Trustee is granted leave to amend the Complaint to replead Count 5.

### ii.    *Count 6: State Law and Constructive Fraudulent Transfer*

The Trustee has sufficiently pleaded that there was no consideration for the Johnson Crosman Bonus because SportCo paid the bonus to Defendant Johnson for work at another Wellspring Capital company, Crosman.  But, as stated above, the Trustee has not demonstrated that the Johnson Crosman Bonus rendered the Debtors insolvent because it was a relatively small payment compared to the Debtors' aggregate liabilities, and the Debtors continued to operate for nearly two years afterward before breaching a covenant.  The Court, however, may accept the Trustee's allegation that the Debtors were insolvent at the time of the Johnson Crosman Bonus because a close analysis of insolvency is not necessary at the motion to dismiss stage.[147]

Therefore, the Motions to Dismiss Count 6 are denied.

---

[146] *Id.* ¶¶ 56, 126.
[147] *Mott*, 445 B.R. at 349 ("[I]nsolvency is generally a factual determination not appropriate for resolution in a motion to dismiss.").

>iii.    *Counts 7 and 8: Bankruptcy Code Constructive and Actual Fraudulent Transfer*

Counts 7 and 8 are time barred.  Under section 548(a)(1) of the Bankruptcy Code, a bankruptcy trustee may recover certain transfers "made or incurred on or within 2 years before the date of the filing of the petition."  The Complaint alleges that the Johnson Crosman Bonus was paid on or around December 2016.  The petition date was June 10, 2019, more than two years after the alleged transfer.

Therefore, the Motions to Dismiss Counts 7 and 8 are granted.

c.    <u>Counts 9 Through 16: The Johnson Compensation</u>

Counts 9 through 16 allege that the Johnson Salary Increase and the Johnson Quarterly Bonuses were actual or constructive fraudulent transfers under state or bankruptcy law.[148]

>i.    *Counts 9, 11, 13 and 15: Actual Fraudulent Transfers*

Looking past the Complaint's conclusory statements that badges of fraud are present, the Court reviews the Complaint for facts that would establish any badge of fraud associated with the Johnson Salary Increase and the Johnson Quarterly Bonuses.  The relationship between Defendant Johnson and SportCo was an employment relationship, meaning the consideration for the transfers was plausibly Defendant Johnson's labor.[149]  The Johnson Salary Increase and Johnson Quarterly Bonuses were agreed to on December 12, 2017,[150] and the Debtors notified their secured lenders of an imminent default on an interest payment in "early 2018."[151]  The transfers were insubstantial compared to the Debtors' other liabilities,[152] and the Complaint does

---

[148] Compl. ¶¶ 227, 239, 250, 263, 275, 287, 298, 311.
[149] *See id.* ¶ 31.
[150] Compl. ¶¶ 91–92.
[151] *Id.* ¶ 76.
[152] *See id.* ¶ 3 ("Wellspring Capital and the D&O Defendants saddled SportCo and the other Debtors with hundreds of millions of debt in 2012 and 2013.").

not allege that the transfers were unusual for SportCo or SportCo's industry. Further, the Complaint does not allege that the Debtors retained control over the funds that were transferred to Defendant Johnson or attempted to conceal the payments. These allegations, considered in the totality of the circumstances, do not constitute sufficient badges of fraud to survive a motion to dismiss.

Therefore, the Motions to Dismiss Counts 9, 11, 13 and 15 are granted. The Trustee is granted leave to amend the Complaint to replead these counts.

ii.    *Counts 10, 12, 14 and 16: Constructive Fraudulent Transfers*

While the Trustee has established that the Johnson Salary Increase and the Johnson Quarterly Bonuses were made shortly before the Debtors notified their secured lenders of the Debtors' inability to pay interest on the 2012 and 2013 loans, importantly the Trustee has pleaded no fact showing that the Debtors received less than reasonably equivalent value in exchange for the transfers. The Trustee has not alleged facts demonstrating that the Johnson Salary Increase and the Johnson Quarterly Bonuses were anything other than compensation for Defendant Johnson's services to the Debtors as president and CEO.

Instead of addressing the value of Defendant Johnson's services, the Trustee asks the Court to infer, without adequate factual allegations, that these transfers lacked consideration given the contemporaneous failure of the AcuSport Acquisition.[153] But often the services of key officers are most needed in a company's most challenging times. The Johnson Quarterly Bonuses, indeed, were explicitly retentive.[154] A plausible reading of the facts as alleged in the Complaint is that the Debtors increased Defendant Johnson's total compensation in an exercise

---

[153] Hr'g Tr. 55:11–19.
[154] Compl. ¶ 92.

of their sound business judgment, and Defendant Johnson's continued services to the Debtors were consideration for the compensation.  No fact has been alleged to support an alternative reading.

Therefore, the Motions to Dismiss Counts 10, 12, 14 and 16 are granted.  The Trustee is granted leave to amend to replead these counts.

### 3.    The Corporate Waste Count

In Count 17, the Trustee alleges that the D&O Defendants' travel expenses were corporate waste.

To support a claim for corporate waste, it must be shown "that the transaction in question either served no purpose or was so completely bereft of consideration such that the 'transfer is in effect a gift.'"[155]  "To recover on a claim of corporate waste, the plaintiffs must shoulder the burden of proving that the exchange was 'so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'"[156]  "The standard for adequately pleading corporate waste is high and rarely satisfied."[157]  "A corporate waste claim must fail if the corporation received any benefit from the challenged transaction or if there is a good faith judgment that the transaction is worthwhile under the circumstances."[158]  "In evaluating a waste claim, courts look to the exchange itself.  The exchange must be irrational."[159]

---

[155] *Criden v. Steinberg*, C.A. No. 17082, 2000 WL 354390, at *3, 2000 Del. Ch. LEXIS 50, at *9 (Del. Ch. Mar. 23, 2000) (quoting *Lewis v. Vogelstein*, 699 A.2d 327, 335 (Del. Ch. 1997)).

[156] *Eisner*, 906 A.2d 27, 74 (Del. 2006) (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)).

[157] *Higher Educ. Mgmt. Grp., Inc. v. Mathews*, No. 9110-VCP, 2014 WL 5573325, at *11, 2014 Del. Ch. LEXIS 224, at *39 (Del. Ch. Nov. 3, 2014).

[158] *Official Comm. of Unsecured Creditors of TEU Holdings v. Kemeny (In re TEU Holdings, Inc.)*, 287 B.R. 26, 34 (Bankr. D. Del. 2002).

[159] *Continuing Creditors' Comm. of Star Telecommuc'ns, Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 465 (D. Del. 2004).

The Trustee alleges in Count 17 that the Defendants wasted the Debtors' assets by forcing the Debtors to pay for the Master's Trip, the Argentina Trip, the Ice Hotel Trip, the Bermuda Trip and potentially other trips.  The Complaint alleges that the trips were "unrelated to any business purpose" and that SportCo received "zero consideration whatsoever in return" for the trips.[160]  This is essentially a recitation of the elements of a claim for corporate waste.

In support of the allegation, the Complaint states that employees or directors of SportCo attended each of the trips, along with third parties, and that at least one of the trips was "purportedly to reward certain of the Debtors' employees and others for their efforts . . . ."[161]  The Complaint does not state that the trips were unusual considering SportCo's industry or historic practices.  The Complaint fails to plead facts demonstrating that the Defendants engaged in transactions in which no reasonable person could conclude made sense for SportCo, a marketer and distributor of a broad line of products and accessories for hunting and shooting sports, marine, camping, archery and other outdoor activities.  The Court concludes that the factual allegations, considered in the light most favorable to the Trustee, do not demonstrate corporate waste.[162]

Therefore, the Motions to Dismiss Count 17 are granted.  The Trustee is granted leave to amend the Complaint to replead Count 17.

---

[160] Compl. ¶¶ 5, 324, 327, 330, 333.

[161] *Id.* ¶ 121.

[162] Additionally, the doctrine of corporate waste has not been applied to a non-director controlling shareholder such as Wellspring Capital.  *See Guiliano*, 574 B.R. at 475–76 ("[T]he Trustee has not cited to (nor did I uncover) any cases in which the Delaware courts have determined that officers or controlling shareholders could be liable for corporate waste.  In the absence of precedent from the Delaware courts, I will dismiss [the count].").  *See also Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169, 207–08 (Bankr. S.D.N.Y. 2020) ("Initially, a claim for waste will not lie against an officer as only directors may be liable for waste under Delaware law.") (citing *Guiliano*, 574 B.R. at 475–76).

**<u>Conclusion</u>**

For the reasons set forth above, the Motions to Dismiss will be granted in part and denied in part, as set forth in the accompanying order.

Dated:  September 29, 2021

J. Kate Stickles
United States Bankruptcy Judge